UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - FLINT

IN RE:

    TODD GRINDING CO.,                                Case No. 14-32717-dof
            Debtor.                                        Chapter 11 Proceeding
                                                              Hon. Daniel S. Opperman
_____/

OPINION REGARDING (1) APPLICATION FOR COMPENSATION FOR IAAS
WORLDWIDE, LLC (DOCKET NO. 143); (2) EX PARTE MOTION FOR CONTEMPT
AGAINST IAAS WORLDWIDE, LLC (DOCKET NO. 161); AND (3) EX PARTE MOTION FOR
CONTEMPT AGAINST ALAN LOESER FOR IAAS WORLDWIDE, LLC (DOCKET NO. 192)

Introduction

The Debtor, Todd Grinding Co., originally sought to reorganize and continue business, but later decided that a sale of all of its assets was necessary to satisfy its creditors. To that end, the Debtor hired IAAS Worldwide, LLC ("IAAS") to sell its assets by auction. At the request of the Debtor and with consent of the United States Trustee, this Court approved this employment. After IAAS held the auction sale, a dispute arose about the proper compensation for IAAS. Because the Court concludes that arrangements publically filed with this Court should be enforced, the Court awards IAAS $100,908.00 for the reasons stated in this Opinion.

Findings of Fact

The Debtor, Todd Grinding Co., ("Debtor") was a successful Michigan corporation engaged in the machining and grinding of automotive parts. As with many other Michigan businesses focused on the automobile industry, economic conditions soured. Also, the Debtor's founder, James Todd, died in 2013 which caused additional stress. The Debtor fell behind in payments to secured creditors and taxing authorities and filed a petition seeking relief under Chapter 11 on October 7,

1

2014, when it became apparent that the taxing authorities would take action to levy the Debtor's assets.

The Debtor initially believed it could reorganize its business operations and service its secured, priority, and unsecured debt, but concluded soon thereafter that it would need to liquidate its assets. The Debtor's April 6, 2015, Chapter 11 Plan and Disclosure Statement called for the liquidation of the Debtor's assets. To that end, the Debtor interviewed various auctioneers and concluded that IAAS would be an appropriate entity to sell its property. On May 1, 2015, the Debtor filed an Application for Authority to Employ IAAS and attached an affidavit of Alan Loeser, along with a Commission Sale Agreement and Bill of Sale ("Agreement"). Mr. Loeser is a principal of IAAS. Per the Agreement, IAAS was to be reimbursed $35,000.00 for auction expenses, receive a 5% seller's premium and a 15% buyer's premium on any property sold by IAAS. The United States Trustee consented to the employment of IAAS and the Court signed an Order Authorizing the Employment of IAAS as auctioneer on May 4, 2015.

By agreement of the parties, the Court approved the Debtor's proposal to sell its assets by auction and that sale was held on June 4, 2015. This sale was consistent with the proposed Chapter 11 Plan of the Debtor and resulted in sale proceeds of $329,540.00. On July 7, 2015, the parties agreed that oversecured creditors could be paid their share of the sale proceeds and this Court approved the disbursement of monies to oversecured creditors on July 8, 2015. As part of this process, the parties stipulated that Debtor's counsel was holding the auction sale proceeds in its IOLTA account.

Subsequently, after disbursement of these funds, the parties requested adjournment of the confirmation hearing to December 16, 2015. On that date, the Court approved the Debtor's

Disclosure Statement and confirmed its Chapter 11 Plan. Shortly thereafter, the Debtor filed a Motion for Order Directing Auctioneer to Turnover Auction Proceeds to Estate, claiming that IAAS still held $109,636.06 that constituted estate property. Attached to this Motion is a Buyer Invoice Summary Report reflecting, for the most part, a 15% premium collected from the buyers.[1] IAAS responded to this Motion to Turnover and filed an Application for Compensation requesting fees of $66,981.54 and expenses of $35,000.00. The Debtor objected to this Fee Application of IAAS, claiming that IAAS had agreed to modify its terms to match a potential competitor who offered 0% seller's premium, 10% buyer's premium, and a cap on expenses of $14,500.00. In support of its contention, the Debtor attached a series of emails dated April 14, 2015, in which Mr. Loeser of IAAS agreed to these terms.

On February 17, 2016, the Debtor and IAAS stipulated to the entry of an order directing IAAS to remit $109,636.06 to Debtor's counsel. IAAS failed to do so and a series of Motions for Contempt were subsequently filed by the Debtor against IAAS and Mr. Loeser, as the individual responsible for the Debtor's relationship with IAAS. Subsequently, counsel for IAAS withdrew and Mr. Loeser responded on behalf of IAAS and himself to various pleadings filed against him by the Debtor. The Court has entered orders compelling IAAS or Mr. Loeser to turnover certain funds, but, to date, the entire $109,636.06 has not been turned over by either IAAS or Mr. Loeser. In response to the Debtor's request, Mr. Loeser indicated that IAAS is and was entitled to certain fees and expenses and that neither he or IAAS have sufficient monies to pay the entire $109,636.06.

---

[1] In many cases, the premium charged was 15%, but in other cases the premium was higher or lower.

## Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 157, 28 U.S.C. § 1334, and E.D. Mich. LR 83.50. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate).

## Analysis

11 U.S.C. § 330 authorizes the payment of fees and expenses for professionals such as IAAS in this case. Per the terms of the employment of IAAS, as consented to by the United States Trustee and approved by this Court, IAAS is entitled to a 5% seller's premium and a 15% buyer's premium. The Application of IAAS indicates that the applicable sale proceeds are $329,540.00, so the seller's premium of $16,477.00 ($329,540.00 x 5%) and $49,431.00 ($329,540.00 x 15%) is owed for auctioneer commissions. Additionally, the expenses, which totaled $43,224.39, are capped at $35,000.00, allowing for a total award of $100,908.00 ($16,477.00 + $49,431.00 + $35,000.00).

The Debtor argues strenuously that IAAS is not entitled to these monies because IAAS agreed to reduce its compensation to a straight 10% buyer's premium with a limit of $14,500.00 for expenses. Per the Debtor's calculations, IAAS is only entitled to $47,454.00 ($32,954.00 + $14,500.00). The Debtor's argument, however, has certain weaknesses. First, it was the Debtor, through counsel, who petitioned the Court seeking approval of IAAS as its auctioneer and the terms of the auction. While the April 14, 2015, emails pre-date the appointment of IAAS as an auctioneer by weeks, neither the Debtor or Debtor's counsel has explained why different terms were submitted to the United States Trustee for its consent and to this Court for approval. Since it was the Debtor, through its counsel, that controlled this process, IAAS cannot be blamed for the submission and filing of these papers for the consent of the United States Trustee and approval of this Court. Moreover, to the public, the terms of the IAAS engagement were clear.

4

Also, neither the Debtor or Debtor's counsel has explained why representations were made in July of 2015 that Debtor's counsel had all of the sale proceeds with no indication whatsoever that there was a dispute as to the amount owed to IAAS. While it is possible that the Debtor and Debtor's counsel were optimistic that these differences could have been resolved informally, the $53,454.00 difference between the parties is startling.

The Court also notes that the Debtor, in its December 23, 2015, Motion for Turnover, did not alert the Court of any potential dispute regarding the auctioneer's commission. It was not until IAAS applied for approval of its fees and expenses that the Debtor revealed the email chain on February 15, 2016.

IAAS, however, is not blameless. First, IAAS has not explained why it held $109,636.06 when its total fees and expenses totaled approximately $101,000.00. Second, IAAS, through counsel, stipulated to return the $109,636.06 to resolve the Debtor's Motion for Turnover. At that point, if IAAS did not have the $109,636.06 to turnover, then the Debtor and the Court should have been advised so that other arrangements could be considered. Instead, it was not until after counsel for IAAS withdrew that Mr. Loeser revealed that IAAS did not have these funds and needed time to turnover the auction proceeds. While Mr. Loeser makes a good common sense argument that it would be foolish to require an entity to turnover funds to the Debtor and then have the Debtor pay those funds immediately back to IAAS, good bankruptcy procedure in this case dictates such a result. It was not until Mr. Loeser was pressed mightily by the Debtor and the United States Trustee that partial payments were made to the Debtor.

To address the issues in this case, the Court first holds that the agreement attached to the Application to Employ IAAS governs in this case. Accordingly, IAAS is entitled to the 5% seller's

5

premium, 15% buyer's premium, and reimbursement of expenses up to $35,000.00. IAAS is therefore entitled to $100,908.00. While there is sufficient evidence to conclude that IAAS agreed to more favorable terms for the Debtor, the Court did approve these terms and all parties, including the United States Trustee and the creditors, were either aware of or constructively put on notice that the Debtor would have to pay these fees and expenses. If nothing more, the Court is compelled to enforce the terms of agreements made in public and filed with the Court, as opposed to secret, side deal transactions that potentially invite mischief. If an error was made in getting the proper agreement attached to the Application consented to by the United States Trustee and approved by this Court, the Court finds that the party responsible for this filing was the Debtor, through its counsel, and not IAAS.

Next, the Court must address the failure of IAAS to act properly in this case. Significant and substantial time and effort was expended by Debtor's counsel and the United States Trustee to recover monies that either should have never been held by IAAS to begin with or were improperly held by IAAS after request for turnover. Also, there is no explanation by IAAS why it entered into the stipulation to turnover. The Orders of this Court compelling IAAS to turnover these funds were not followed and a finding of contempt against IAAS and Mr. Loeser is appropriate. *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827 (1994) ("[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience . . . ."). In defense of that finding, however, IAAS and Mr. Loeser claim that they are and were unable to comply with the Court's Order. Here, the information given by Mr. Loeser, as well as subsequent efforts by him to turnover a portion of the funds compel the Court to conclude that IAAS and Mr. Loeser have sufficiently explained their

6

actions such that the Court will not take further action on the previous Orders of this Court. *Elec. Workers Pension Trust Fund of Local Union #58 v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 379 (6th Cir. 2003) (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983) (holding that once a prima facie case of contempt is shown, "the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is *presently* unable to comply with the court's order."). The Court will, however, allow Debtor's counsel to file an Application for Fees for actions taken to attempt to enforce the previous Orders of the Court. The award of some fees to Debtor's counsel and against IAAS is appropriate under these circumstances. The Court will closely examine the request for fees and balance that request with the realization that much of the confusion here was caused by Debtor's counsel's mistake in filing the Application to Employ IAAS.

## Conclusion

The Court finds that IAAS is entitled to fees of $65,908.00 and expenses of $35,000.00 for a total award of $100,908.00. Counsel for the Debtor is directed to file a Application for Fees by **February 13, 2017,** in regard to the efforts of counsel to recover monies improperly held by IAAS. The Court will enter an order consistent with this Opinion.

cc:  Alan Loeser

**Not for publication**

```
Signed on January 23, 2017
                                           /s/ Daniel S. Opperman
                                      Daniel S. Opperman
                                      United States Bankruptcy Judge
```